GEORGE M. WHITEHEAD *vs.* COMSTOCK & COMPANY.

PROVIDENCE—OCTOBER 30, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Landlord and Tenant.  Repairs.  Negligence.*

In the absence of any agreement to repair the premises on the part of the landlord, and in the absence of any fraud or concealment on his part as

to their safe condition, and where the defects in the premises are not secret but obvious, the tenant takes the risk of their safe occupancy; and an action of negligence cannot be maintained by the tenant against the landlord for injuries suffered through any defect in the premises.

(2) *Landlord and Tenant.  Furnishing Water.  Repair of Pipes.*

Where a landlord is by express agreement bound to furnish the tenant with water; he is not bound to keep the pipes in repair; and no action arising out of the want of repair of the pipes, by reason of which the tenant was injured, can be maintained.

(3) *Landlord and Tenant.  Negligence.  Duty to tenant.*

Where there was no original duty devolved upon the defendant to furnish the instrument causing the injury, for the plaintiff, the defendant is not required to keep such instrument in a safe condition to be used by plaintiff, or to see that plaintiff is not injured by its unsafe and defective condition.

TRESPASS ON THE CASE for negligence, by tenant against landlord.   Heard on demurrer to declaration, and demurrer sustained.

TILLINGHAST, J.   The declaration in this case sets out a hiring by the plaintiff from the defendants of a certain tenement, and an agreement on the part of the defendants to provide water in said tenement for the use of the plaintiff.   It then alleges that it was the duty of the defendants to provide water pipes and faucets in suitable and convenient places in said tenement, and to keep them in suitable and proper condition for the use of the plaintiff and his family.   It then avers a breach of this alleged duty on the part of the defendants, and that they "caused to be arranged a place in the cellar under the tenement of the plaintiff to which he and his wife and family were compelled to go in order to procure water for domestic purposes."

It further avers that said cellar was dark; that there was a defect in the water pipe which entered the cellar, which defect was known to the defendants, or by the exercise of due care might have been known to them; that by reason of this defect the water escaped from the pipes into and upon the floor of said cellar, causing ice to be formed thereon and causing dampness in the cellar, whereby the floor become slippery—all

of which was known to, or by the' use of due care might have been known to the defendants.

The declaration then avers that, because of said condition of things in the cellar, the defendants procured and placed on the floor thereof a plank for the plaintiff and his wife and family to walk upon when going after water, and that it then became the duty of the defendants to see to it that said plank was safe for the use of the plaintiff, together with his wife. and family, and especially to see to it that said plank should not become icy and slippery and dangerous for those who should walk thereon. It then alleges that the defendants neglected to keep said plank free from ice, and fit to be walked upon, as it then 'became their duty so to do, and .that the plaintiff's wife, while procuring water in said cellar, and while in the exercise. of due care, by reason of the fact that said board was covered with ice, "or some such slippery substance," slipped and fell, and was greatly and permanently injured thereby.

To this declaration the defendants have demurred, on the grounds (1) that no duty to the plaintiff is shown to rest on the defendants as attempted to be stated in said declaration; (2) that it is not alleged that the defendants had any knowledge of the slippery condition of the plank before or at the time of the happening of the accident in question; and (3) that it appears by the declaration that the proximate cause of the accident was the negligence of the plaintiff's wife.

(1)    We think it is clear that the .demurrer should be sustained. It is well-settled law that there is no implied warranty on the part of a landlord that the premises let by him are suitable for the purpose for which they were hired. "The maxim *caveat emptor* applies, and the lessee takes the risk of condition, unless he protects himself by express covenant. In other words, the tenant takes the premises 'for better or for worse,' and cannot complain that they were not constructed differently." MacAdam on Land & Ten. 3rd ed. p. 1245. *Railton* v. *Taylor*, 20 R. I. 279, is to the same effect. See also *Dutton* v. *Gerrish*, 9 Cush. 89; *Royce* v. *Guggenheime*, 106 Mass. 201; *Woods* v. *Cotton Co.*, 134 Mass. 357; Taylor on Land & Ten. 8th ed. §§ 327–8.

In short, the law undoubtedly is, as held by the court in the well-reasoned case of *Purcell* v. *English*, 86 Ind. 34, that no duty to repair on the part of the landlord arises out of the relation of landlord and tenant; but on the contrary this relation devolves that duty upon the tenant, and it is only where the landlord contracts to keep the premises in repair that he is burdened with that duty. And, as said by the court in that case: "The logical conclusion from this principle (and a more firmly settled one there is not in all the books) is, that a landlord, not under contract to repair, is not, as a general rule, responsible to the tenant for injuries caused by a defective condition of the demised premises." See also *Humphrey* v. *Wait*, 22 Up. Can. Com. Pleas, 580.

In cases where there is fraud or concealment on the part of the landlord regarding the safe condition of the premises let, a different rule would apply; as, for instance, where there are hidden traps or pitfalls which are known to the landlord, but unknown to the tenant (see *Capen* v. *Hall*, 21 R. I. 366), and the latter is injured thereby, without any fault on his part. But in the absence of any agreement to repair the demised premises on the part of the landlord, and in the absence of any fraud or concealment on his part as to their safe condition, and the defects in the premises are not secret, but obvious, the authorities seem to be unanimous that the tenant takes the risk of their safe occupancy. *Harpel* v. *Fall*, 65 N. W. Rep. (Minn.) 913; Wood's Land. & Ten. § 382; *Carstairs* v. *Taylor*, L. R. 6 Ex. 217; *Davidson* v. *Fischer*, 11 Colo. 583; *Moynihan* v. *Allyn*, 162 Mass. 270; *Jaffe* v. *Harteau*, 56 N. Y. 398; Thompson on Neg. vol. 1, § 1131, and cases in note.

(2)    In the case at bar there is no allegation that the defendants agreed to keep the premises in question in repair, or that they agreed or promised to do anything, in connection with the use thereof by the plaintiff, except to provide him with water, and this they did. But for this special agreement the defendants would have been under no obligation to furnish water even; as "it is not the duty of a landlord to furnish water for the use of his tenant unless he has agreed to do so." *Sheldon* v.

*Hamilton*, 22 R. I. 233. Moreover, as held in the case just cited, "It is not the duty of the landlord to keep the pipes in repair even, much less to keep them filled with water." The allegation in the plaintiff's declaration, therefore—that it was the duty of the defendants to provide water, water pipes, and faucets, in proper and suitable condition, and at convenient places in said tenement—can be given no effect, as no such duty was devolved upon them by law. And this being so, it logically and necessarily follows that no cause of action is stated. For it is an elementary proposition of law that in order to sustain an action of this sort, which is trespass on the case for negligence, there must be a legal duty shown on the part of the defendant and a failure on his part to discharge that duty.

(3) As to that part of the declaration which sets out that the defendants placed a plank in the cellar for the plaintiff and his family to walk upon when going after water, and that thereupon, and by reason thereof, it became the duty of defendants to keep said plank in a safe condition for use, and particularly to see to it that the plank should not become icy or slippery, it is sufficient to say that, as no duty devolved upon the defendants to place said plank in the cellar, they were not called upon afterwards to keep watch of it and prevent it from becoming covered with ice or other slippery substances. The placing of it in the cellar was evidently intended as an act of accommodation on the part of the defendants, and as they received no consideration therefor and made no promise, either express or implied, as to maintaining the same, no liability attached to them by reason of this act. Indeed, even if the defendants had agreed to keep said plank in a safe condition, such agreement, being made subsequent to the time of the hiring of the premises, and having no relation thereto, would have been a mere *nudum pactum*, and hence no right would have accrued to the plaintiff thereunder. *McKeon* v. *Cutter*, 156 Mass. 296, is in point upon this branch of the case.

That was an action of tort for injury to the plaintiff's goods caused by the leaking of water from pipes which the plaintiff contended the defendant, who was his landlord, was bound to

keep in repair, but had negligently suffered to be out of repair.
The defendant had made repairs to the pipes, at the plaintiff's
request, but such repairs did not have the effect to prevent the
leakage in question.

The court held that the making of repairs by the landlord,
at the request of the tenant, upon the water pipes, was a mere
gratuitous act upon the part of the landlord and did not im-
pose any liability upon him.

As the first ground of demurrer is well taken and goes to
the root of the action attempted to be stated, there is no occa-
sion for considering the other grounds taken by defendants'
counsel.

The demurrer is sustained, and case remanded for further
proceedings.

*Hugh J. Carroll*, for plaintiff.
*Dexter B. Potter and Edward A. Stockwell*, for defendants.