MARIA CORCIONE *vs.* RALPH J. RUGGIERI *et al.*

MARCH 12, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is an action of trespass on the case for negligence to recover damages for personal injuries sustained by the plaintiff as a result of a fall in an alleged hole or depression on premises occupied by her daughter as a tenant of the defendants. The case was tried before a justice of the superior court sitting with a jury. At the conclusion of all the evidence the defendants moved for a directed verdict. The case is before us on the plaintiff's single exception to the granting of such motion by the trial justice.

The declaration consists of two counts which are similar in all respects except as to the allegations specifying the breach of defendants' alleged duty. In the first count they are charged with the breach of an alleged duty to exercise reasonable care in the laying out and care of the premises in question in that they allowed a dangerous condition to exist thereon, namely, a hole concealed by a growth of grass. In the second count the breach charged is in substance a violation of said duty in that they allowed the existence

of an overgrowth of grass which concealed the hole described in both counts of the declaration.

On June 26, 1954 plaintiff was injured by a fall while walking across the lawn of premises hired by plaintiff's daughter from defendants sometime prior to the date of such accident.

It appears from the evidence that on May 20, 1954 plaintiff's daughter, whom we shall refer to herein as the tenant, visited the premises, a summer cottage in the city of Warwick, together with one of defendants; that she looked over the grounds but did not go to the spot where her mother fell; that she inspected the house inside and out; that she agreed to rent the property from June 15 to September 15, 1954 for $600 on which a deposit of $25 was paid on May 20, 1954; and that the balance of $575 was paid on June 16, 1954 at which time, according to the tenant, the defendants turned over the keys to her and a receipt for the full rental of $600.

The tenant testified that on June 20, 1954 she again visited the premises with her family and her mother, the plaintiff in the instant case; that they had a picnic and were on the premises for about one hour and a half but did not cross the lawn; and that they sat on the beach in front of the house during the time they were there.

The premises consist of a garage, which is located at the street line, and a house which is set back therefrom facing the street and the rear of the garage. To the right of the garage as one faces the house is a path which leads to the waterfront and to the left of the garage as one faces the house there were long pieces of timber set on the ground at the lot line to protect the newly seeded lawn from automobiles driving upon it.

The tenant testified that the condition of the grass had been discussed by her with one of defendants who told her that he would cut the first grass; that after that it was up to her son to cut it; that he would leave the lawn mower

in the garage; and that this conversation took place on June 16, 1954 at defendants' place of business when she paid the balance of the rental and received the keys and receipt from one of defendants. In answer to the following question by defendants' counsel: "* * * you do not know the height of the grass on June 16th, 1954 because you did not go to the property?" she replied: "I did not go to the property on June 16th." She also testified that she did not know the height of the grass on that date.

It appears from the evidence, as has already been noted, that the tenant was on the premises on June 20, 1954 for about one and one-half hours with her family. She further testified that although she did not pay any particular attention to the height of the grass on that visit, it was "high enough so that when we finally did cut it two or three days after the accident my son couldn't cut it with a lawn mower and we had to use one of those sod cutters."

On June 26, 1954 the tenant went to the premises, together with other members of her family including plaintiff, for the purpose of occupying the same for the summer season. It was between 3 and 4 p.m. After getting out of the car plaintiff, who was seventy-four years old, walked across the lawn accompanied by one of her daughters who was walking along arm in arm with her. When they were in the middle of the yard plaintiff fell and in falling pulled her daughter to the ground.

The testimony of the tenant, who was following her mother, and plaintiff's other witnesses was in substance that immediately after the accident they noticed that at the point where plaintiff fell there was a hole about four or five inches deep, about twenty inches long and twelve inches wide, which was overgrown by grass; that it was a big hole, "like a big rock came out of it, just as big as a watermelon could fit in"; that it was "big as though a big boulder had been removed out of it and hadn't been filled up"; and that this hole was observed after the accident but

was not observable prior thereto because of the height of the grass. There was also testimony describing the grass on the day of the accident as being very high, "seven or eight inches or maybe even more"; and that it was quite high, looked all level, and gave no appearance of anything unusual. The testimony also shows that the hole was first seen by plaintiff's witnesses when they tried to get her up and that at that time her feet were in the alleged hole.

The testimony of defendants is in direct conflict with that of the plaintiff. They deny the existence on their lawn of the hole in question. One of their witnesses, an employee of defendants, testified that he had top-dressed, seeded and rolled the lawn during the month of March 1954; that after the grass started to grow he cut it every Sunday or Monday until the end of June; that thereafter if defendants rented the house it was up to the tenant to take care of it; and that there never was such a hole in the lawn as long as he took care of the place. The defendant, Ralph J. Ruggieri, testified that the grass was last cut on June 13, 1954, and that on the day he gave the keys to the tenant he told her: "After the 15th of the month everything here is left to you, you cut the grass."

On this record the trial justice granted defendants' motion for a directed verdict on the grounds that the tenancy was created on June 16, 1954, the day on which defendants turned over the keys to the tenant; that plaintiff was an invitee of the tenant; that as such she was owed no duty by defendants to exercise reasonable care as alleged; that the only duty owed by them was to refrain from a concealment of any known danger or defect or from practicing a fraud upon plaintiff; and that the testimony was that defendants did not know of any hole on said premises.

It is well established that a guest or a member of the family of a tenant has no higher rights against a landlord than the tenant himself has. *Henson v. Beckwith,* 20 R. I. 165; *Davis v. Smith,* 26 R. I. 129; *White v. Heffernan,* 60

R. I. 363. 32 Am. Jur., Landlord and Tenant, §665. It is also well settled that there is no implied warranty on the part of a landlord that the premises let by him are suitable for the purpose for which they were hired. A tenant takes the premises hired in the condition in which he finds them, in the absence of an express agreement that they are otherwise than they are in fact. *Railton* v. *Taylor*, 20 R. I. 279; *Whitehead* v. *Comstock & Co.*, 25 R. I. 423, 425; *Gorski* v. *Consolidated Rendering Co.*, 41 R. I. 339; *White* v. *Heffernan, supra; Lawton* v. *Vadenais*, 84 R. I. 116, 32 Am. Jur., *supra*.

However, plaintiff contends that there was evidence of a latent dangerous condition amounting to a trap and, although she admits that the general rule is that a landlord is not liable for injuries which result from latent defects on demised premises unless at the time the tenancy began the landlord had actual knowledge of such defects, she claims that there was evidence which tended to disprove defendants' testimony that they knew nothing of the hole in the lawn. In other words plaintiff argues that in granting the motion for a directed verdict the trial justice was compelled to assume as true plaintiff's evidence of the existence of the hole on June 26, 1954 and of the fact that the grass was very high on that date and that the hole was concealed by the overgrowth of grass. The plaintiff further argues that in view of defendants' testimony that they had cut the grass the jury could have disbelieved their testimony denying the existence of such hole or any knowledge on their part of the same, and could reasonably have inferred that defendants had actual knowledge of the existence of the hole or overgrowth of grass.

We do not deem it necessary to consider defendants' contention that plaintiff, under her declaration, should not be permitted to shift from the theory of negligence, set forth therein, in failing to make the premises reasonably safe for occupancy, to one for deceit in concealing a known condi-

tion of danger. Assuming without deciding that plaintiff can do so, we are of the opinion that there is no merit in her contentions.

It is well established that on a motion for a directed verdict all the evidence together with every reasonable inference therefrom must be construed most favorably to the party opposing such motion. *Kane* v. *Burrillville Racing Assn.,* 73 R. I. 264.

It is clear that the tenancy in the instant case was created on June 16, 1954. It consequently follows, as an incident of said tenancy, that the tenant thereafter had control of the demised premises during the period of the tenancy. It is well established that if a landlord discovers a latent defect after the beginning of a tenancy, he is under no obligation to communicate it to the tenant. 32 Am. Jur., Landlord and Tenant, §672, p. 543. Therefore in the instant case we are concerned only with latent defects which may have existed on or before the creation of the tenancy.

Accepting as true plaintiff's evidence of the existence of a hole or depression in the lawn, there is no evidence that such hole or depression was concealed by an overgrowth of grass on or before June 16, 1954, the day the tenancy was created. In fact the tenant testified that she did not visit the premises and that she did not know what the condition of the grass was on that day. It would be pure speculation to infer what the condition of the grass was on that day. It is well established that where the defects are not concealed the tenant or his guests take the risk of their safe occupancy and the landlord is not liable for injuries sustained by the tenant or his guests. A landlord is under no duty to advise a tenant of conditions which are apparent. *Whitehead* v. *Comstock & Co., supra,* at page 426. See also *Cutter* v. *Hamlen,* 147 Mass. 471, and *Charlton* v. *Brunelle,* 82 N. H. 100. 32 Am. Jur., Landlord and Tenant, §671. *Davis* v. *Smith,* 26 R. I. 129.

Moreover, there is clearly no evidence that the defend-

ants, on or before June 16, 1954, knew of, or concealed, the existence of the alleged dangerous condition. In our opinion the jury would not have been warranted in inferring that the existence of the alleged dangerous condition on or before that date was known by the defendants from the fact that the hole in question was in existence on June 26, 1954, the day of the accident, and from the fact that they had been cutting the grass up to June 13, 1954 or the end of June. In view of our conclusion that it would be unreasonable to infer that the grass was "high" on or before June 16, 1954 from the evidence that it was "high" on June 26, 1954, and because we believe that the jury would not be warranted in inferring knowledge on the part of the defendants when the only evidence is that they had no such knowledge, we are of the opinion that the trial justice did not err in directing a verdict for the defendants. *Condon* v. *Winn,* 252 Mass. 146.

The plaintiff's exception is overruled, and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*Fergus J. McOsker,* for plaintiff.

*Boss, Conlan, Keenan, Bulman & Rice, John T. Keenan,* for defendants.