Judith A LAWTON, Thomas Lawton, Marsha E. Daras, Stephen H. Lawton, Nancy J. Cronin, David T. Lawton, T. Michael Lawton, Joanna J. Lawton, and Suzanne M. Lawton, Plaintiffs,

v.

Robert NYMAN, Keith Johnson, Kenneth Nyman, Nyman Manufacturing Co., Inc., Defendants.

No. Civ.A. 98–288T.

United States District Court, D. Rhode Island.

Aug. 24, 1999.

Joseph V. Cavanagh, Jr., Karen Ann Pelczarski, Blish & Cavanagh, Providence, RI, for plaintiffs.

Robert Clark Corrente, Hinckley, Allen & Snyder, Providence, RI, for Robert C. Nyman, Keith Johnson, Kenneth J. Nyman.

William S. Eggeling, Joanne McPhee, Ropes & Gray, Providence, RI, Michael P. Allen, Ropes & Gray, Boston, MA, for Nyman Manufacturing Co., Inc., defendant.

### Memorandum and Order

TORRES, District Judge.

The plaintiffs are former shareholders in Nyman Manufacturing Co., Inc. ("Nyman Mfg." or the "corporation"). They brought this action against the corporation and several of its officers and directors alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the

"1934 SEA"), violations of Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, breach of fiduciary duties, fraud, negligent misrepresentation, and unjust enrichment in connection with the redemption of their stock. The corporation has moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6).

The issue presented is whether, under § 10(b), a corporation may be held liable for false or misleading statements made by persons having apparent authority to speak on its behalf. Because I answer that question in the affirmative, the motion to dismiss is denied.

### BACKGROUND

The allegations set forth in the complaint may be summarized as follows. The plaintiffs owned 952 shares of Class A common stock in Nyman Mfg. On May 8, 1996, Keith Johnson, a corporate officer and director, sent letters to the plaintiffs stating that the corporation was willing to purchase their shares for $200 per share.[1] Shortly thereafter, Judith Lawton's brother, Robert Nyman, another corporate officer and director, telephoned Lawton and told her that the corporation was losing money, the losses were likely to continue and the value of the stock was likely to decline. Based on those representations, on May 22, 1996, the plaintiffs accepted the offer and sold all of their stock to the corporation for $200 per share.

One month later, Robert Nyman, Keith Johnson, and Kenneth Nyman, a corporate officer and director and another brother of Judith Lawton, bought 4,115 shares of Class A stock and 750 shares of Class B stock from the corporation. The Class A shares were purchased for $200 per share, the same price for which the plaintiffs' shares were redeemed. Approximately 15 months later, in September 1997, Van Leer Industries purchased all of Nyman Mfg.'s stock for $1,800 per share.

1. A copy of the letter that was sent to Judith A. Lawton is attached to the amended com-

The gist of the plaintiffs' claims is that the defendants

> knew and failed to disclose [to the plaintiffs] that (a) Nyman Mfg. would be purchased or was likely to be purchased, (b) Nyman Mfg. was being prepared for purchase, (c) the shares of Class A common stock in Nyman Mfg. were grossly undervalued at two hundred ($200.00) dollars per share, and (d) defendants intended to repurchase plaintiffs' shares.

(Am.Compl.¶ 15.) The plaintiffs allege that, in deciding to sell their stock, they relied on the defendants' misrepresentations. (*See id.* ¶ 19.)

### DISCUSSION

The corporation has presented several reasons why some or all of the plaintiffs' claims should be dismissed. After hearing oral argument, the Court rendered a bench decision granting the motion to dismiss with respect to some claims; denying it with respect to others and reserving decision as to whether, under § 10(b) of the 1934 SEA, the corporation can be held vicariously liable for the acts of its officers and directors.

The corporation's motion to dismiss the breach of fiduciary duty claim contained in Count II was granted on the ground that the claim could be asserted only against the individual defendants. The motion to dismiss the unjust enrichment claim against the corporation contained in Count V also was dismissed because it was the individual defendants and not the corporation who benefitted from the redemption and resale of the plaintiffs' stock. *See Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors,* 589 A.2d 1201, 1201–02 (R.I.1991) (in order to recover on a claim of unjust enrichment, a plaintiff must prove that a benefit was conferred upon the *defendant* ).

plaint as Exhibit A.

On the other hand, the motion to dismiss the § 10(b) claim and the state law claims for fraud and misrepresentation on the ground that those claims were not pled with the particularity required by Fed. R.Civ.P. 9(b) was denied. This Court determined that the complaint adequately specified "'the time, place, and content of [the] alleged false representation.'" *Dowling v. Narragansett Capital Corp.*, 735 F.Supp. 1105, 1111 (D.R.I.1990) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985)), and that the specific facts alleged "make it reasonable to believe that [the] defendant[s] knew that [their] statement was materially false or misleading." *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir.1992).

More specifically, the Court noted that the defendants purchased the shares surrendered by the plaintiffs one month after they had been redeemed and for the same price at which the plaintiffs sold them ($200 per share). In addition, 15 months later, all of the stock in the corporation was sold for $1,800 per share. It is certainly reasonable to infer that the defendants would not have purchased the plaintiffs' stock for $200 per share if they believed that the corporation would continue to lose money and if they did not know that a sale of the corporation was imminent.

The remaining issue to be decided is whether the corporation can be held liable, under § 10(b), for the alleged misrepresentations of its officers and directors. The corporation argues that it cannot be held liable because § 10(b) does not impose vicarious liability. Alternatively, it argues that even if § 10(b) imposes vicarious liability, the plaintiffs' allegations are insufficient to establish such liability.

### I. *Standard of Review*

In ruling on a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). The motion should be granted "only if, when viewed in this manner, the pleading shows no set of facts which could entitle [the] plaintiff to relief." *Id.*

### II. *Indirect Liability under § 10(b)*

Section 10(b) of the Securities Exchange Act of 1934 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Securities and Exchange Commission Rule 10b–5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon

any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

■ A party may violate § 10(b) even though that party, itself, did not directly commit the manipulative or deceptive act, in question. The statute and the regulation expressly prohibit committing such acts either directly or *indirectly*. Thus, a party that causes or is responsible for the commission of manipulative or deceptive acts may not escape liability on the ground that those acts were performed through a proxy rather than by the party, itself.

The difficulty lies in determining the circumstances under which a party is responsible for; and, therefore, can be said to have indirectly engaged in conduct proscribed by § 10(b). The specific issue presented in this case is whether a corporation may be viewed as indirectly committing deceptive acts because of misrepresentations made by individuals cloaked with apparent authority to speak for the corporation.

In *In re Atlantic Financial Management, Inc.*, 784 F.2d 29 (1st Cir.1986), the First Circuit held that this determination should be based upon traditional common law rules regarding a principal's vicarious liability for the acts of its agents. *Id.* at 31–32. The Court further held that the provisions of § 20(a) imposing liability for violations of the 1934 SEA on "controlling persons" did not preclude "this kind of vicarious liability." *Id.* at 32–34. Accordingly, the court affirmed a decision holding a corporation vicariously liable, under § 10(b), for misrepresentations made by its chairman who had apparent authority to act on behalf of the corporation.

■ Nyman Mfg. argues that *Atlantic Financial Management* has been superseded by the Supreme Court's subsequent decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), which Nyman Mfg. reads as eliminating vicarious liability under § 10(b). However, this Court rejects that argument.

*Central Bank* holds that, under § 10(b), liability extends only to those who engage in deceptive conduct and not to those who simply aid and abet the violation. *Id.* at 177, 114 S.Ct. 1439 ("[W]e again conclude that the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act.... The proscription does not include giving aid to a person who commits a manipulative or deceptive act.").

The decision in *Central Bank* rests primarily on the fact that the text of the statute contains no reference to "aiding and abetting." *Id.* at 176–177, 114 S.Ct. 1439. However, the Court also rejected the argument that "aiding and abetting" was encompassed by the phrase "directly or indirectly" because it found that "aiding and abetting liability reaches persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do." *Id.* at 176, 114 S.Ct. 1439. In that connection, the *Central Bank* Court noted that § 20 of the 1934 SEA imposes liability on persons who "control" those who violate the Act but not those who aid and abet violators and it concluded that the imposition of "some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere." *Id.* at 184, 114 S.Ct. 1439.

*Central Bank* is readily distinguishable from both *Atlantic Financial Management* and this case. In *Central Bank*, the issue was whether aiding and abetting a misrepresentation that violates § 10(b) also is a violation of that section. Here, as in *Atlantic Financial Management*, the conduct on which the claimed liability rests is the misrepresentation itself, and not merely "giv[ing] a degree of aid to those who [made it]." *Id.* at 176, 114 S.Ct. 1439. Here, it is clear that the alleged misrepresentations regarding the value of the plaintiffs' stock clearly violate the statute and the plaintiffs seek to hold the corporation

vicariously liable for that conduct rather than for aiding and abetting those who committed the alleged violation. Thus, "[u]nlike the issues in *Central Bank* ... the issue in this case-whether respondeat superior is a legitimate basis of liability under § 10(b)—is not a question of defining the scope of affirmative conduct proscribed by the statute. Instead, the issue is 'deciding on whose shoulders to place responsibility for conduct indisputably proscribed' by the statute." *Seolas v. Bilzerian*, 951 F.Supp. 978, 983 (D.Utah 1997) (quoting *American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1430–31 (3d Cir. 1994) ("*AT & T*")).

On that question, the holding in *Atlantic Financial Management* that a corporation may be vicariously liable for § 10(b) violations based upon common law agency principles remains controlling. *See also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576–77 & n. 27 (9th Cir.1990), and cases cited therein. To put it another way, misrepresentations made by agents vested with apparent authority to speak for a corporation may be described as made "indirectly" by the corporation.

Indeed, if the term "indirect" did not embrace common law agency principles, § 10(b) would be rendered virtually inapplicable to corporations because a corporation acts only through its agents. *See AT & T*, 42 F.3d at 1431. Such a result would conflict with Congress' manifest intent to subject corporations to liability by including them in the definition of "person" contained in 15 U.S.C. § 77b(2). *See Atlantic Fin. Management*, 784 F.2d at 33–34.

In short, applying agency principles of vicarious liability to determine whether a corporation may be held accountable for § 10(b) violations does not enlarge the scope of the conduct that the statute proscribes. Rather, it permits the determination to be made in accordance with the same well established rules that govern corporate liability in other contexts. As the Third Circuit has said: "The principal is held liable not because it committed some wrongdoing outside the purview of the statute which assisted the wrongdoing prohibited by the statute, but because its *status* merits responsibility for the tortious actions of its agent." *AT & T*, 42 F.3d at 1431 (emphasis in the original).

### III. *Sufficiency of the Plaintiffs' Allegations*

■ Nyman Mfg. argues that, even if vicarious liability may be imposed under § 10(b), the amended complaint is insufficient to state such a claim. First, it points out that the § 10(b) claim refers only to conduct by the individual defendants. However, it is clear from the complaint that the plaintiffs are asserting a claim against the corporation on the theory that the corporation is vicariously liable for the alleged misrepresentations of its directors and officers. Moreover, the complaint specifically describes those misrepresentations. Nothing more is required. "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir.1989); *accord Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 622 (1st Cir.1988); 2 James Wm. Moore et al., *Moore's Federal Practice* § 8.04[3] (3d ed.1999).

■ Nyman Mfg. also argues that the amended complaint is deficient because it fails to allege that the plaintiffs relied on the individual defendants' apparent authority to act for the corporation. It is true that reliance upon the appearance of authority is a necessary element in establishing apparent authority. *See* J. Christopher York, *Vicarious Liability of Controlling Persons: Respondeat Superior and the Securities Acts—A Reversible Consensus in the Circuits*, 42 Emory L.J. 313, 326–28 (1993). It is also true that the complaint does not expressly allege reli-

ance on the individual defendants' appearance of authority. However, it does allege that the plaintiffs relied on the individual defendants' representations and that those defendants were "at all times ... officer[s], director[s], shareholder[s] and employee[s] of defendant Nyman Mfg." (Am. Compl.¶¶ 4–6, 12). In addition, it alleges that the plaintiffs sold their stock to the corporation in response to a formal offer contained in a letter signed by Keith Johnson as President of the corporation. (*See* Am.Compl. Ex. A.) Thus, although the complaint could have been drafted more artfully, it is sufficient to put the corporation on notice that the plaintiffs' claim against it rests on the appearance of authority vested in the individual defendants.

Finally, Nyman Mfg. makes a novel argument that the claim against it should be dismissed because the plaintiffs have an adequate remedy against the individual defendants, and, therefore, there is no need to bind the company to any judgment. In support of that argument, Nyman Mfg. cites language in *Calenda v. Allstate Insurance Co.*, 518 A.2d 624 (R.I.1986), where the court stated that, in order to establish apparent authority under Rhode Island law

> facts must be shown that the principal has manifestly consented to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; that a third person knew of the fact and, acting in good faith had reason to believe and did actually believe that the agent possessed such authority; and that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss *if the act done or transaction executed by the agent does not bind the principal.*

*Id.* at 628 (quoting *Soar v. National Football League Players Ass'n,* 438 F.Supp. 337, 342 (D.R.I.1975), *aff'd,* 550 F.2d 1287 (1st Cir.1977)) (emphasis added).

Nyman's reliance on *Calenda* is misplaced. Like most apparent authority cases, *Calenda* involved a suit for breach of contract in which it was incumbent upon the plaintiff to show that he would suffer a loss (i.e., loss of the benefit of his bargain) unless the principal was bound by the contract made with the principal's apparently authorized agent. The underscored language in *Calenda* merely confirms the requirement that the loss would result from a failure to bind the principal. It does not mean that the principal is relieved of liability for the acts of its agent simply because a claimant also may have a cause of action against the agent.

By contrast, the applicability of the doctrine of apparent authority is much more limited in tort cases. Ordinarily, a plaintiff who is injured by the negligence of a putative agent would be hard-pressed to demonstrate that the injury resulted from reliance upon the agent's apparent authority. For example, it is unlikely that a pedestrian who is struck by a truck could establish that he was injured because he believed that the driver had the owner's authorization to operate the truck.[2]

■ However, the doctrine of apparent authority frequently applies in tort cases involving misrepresentation. Thus, a principal may be liable for misrepresentations made by an agent having apparent authority to speak for the principal when a claimant suffers a loss resulting from its reliance on the agent's appearance of authority. *See Atlantic Fin. Management,* 784 F.2d at 32.

That is precisely the situation presented in this case. The plaintiffs allege that Nyman Mfg. is liable for the losses they

---

**2.** On the other hand, it may make sense to say that a hospital is liable for the consequences of malpractice by an unqualified staff physician when the patient submits to treatment only because the patient believes that the physician is an agent of the hospital and, therefore, relies upon the hospital's judgment with respect to the physician's qualifications. *See Rodrigues v. Miriam Hosp.,* 623 A.2d 456, 462 (R.I.1993).

sustained upon the redemption of their stock because they acted in reliance upon representations that they believed to have been authorized by the corporation. The fact that the plaintiffs also may have a claim against the individuals making the representations is immaterial.

### IV.   *Direct Liability Under § 10(b)*

Even if "indirect liability" under § 10(b) did not include vicarious liability based upon the doctrine of apparent authority, the complaint is sufficient to state a claim against the corporation. The letter appended to the complaint that offers to redeem the plaintiffs' shares is signed by Johnson on behalf of Nyman Mfg. (*See* Am.Compl. Ex. A.) Thus, it appears to be an act in furtherance of the alleged scheme to defraud that was performed by the corporation, itself, that would provide a basis for imposing "direct" liability under § 10(b).

### *CONCLUSION*

For all of the foregoing reasons, defendant Nyman Mfg.'s motion to dismiss is granted with respect to the claims for breach of fiduciary duty and unjust enrichment contained in Counts II and V, and it is denied with respect to all other claims. IT IS SO ORDERED,