John D. **BUTLER** and Corliss E. **Butler** as parents and legal guardians of their minor child Bryan A. **Butler**, Plaintiff,

v.

**McDONALD'S CORPORATION,** Defendant.

No. CA98–439–L.

United States District Court, D. Rhode Island.

Aug. 24, 2000.

---

**63**

Thomas A. Tarro, III, Warwick, RI, for Plaintiff.

Lauren DiSimone Wilkins, Gallagher & Gallagher, Providence, RI, Ronald P. Langlois, Smith & Brink, P.C., Providence, RI, for Defendant.

## OPINION AND ORDER

LAGUEUX, District Judge.

John D. and Corliss E. Butler have brought this action on behalf of their minor child, Bryan A. Butler ("plaintiff"), for injuries he sustained as the result of the alleged negligence of McDonald's Corporation ("defendant"), its agents, servants, and/or employees in maintaining the premises of a franchised restaurant and in training and supervision of its agents, servants and/or employees.

The matter is now before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Because genuine issues of material fact exist, this Court denies defendant's motion for summary judgment.

### I.  Facts/Background

For eleven years defendant has leased a restaurant building and premises at 6595 Post Road, North Kingstown, Rhode Island ("franchise restaurant") to James Cooper ("Cooper").  Defendant also has a license franchise agreement that allows Cooper to operate the business under the McDonald's name according to a variety of requirements and conditions typically found in franchise arrangements.  It is undisputed that the employees working at the franchise restaurant are not employees of defendant but rather are employees of Cooper.

On or about July 25, 1997 plaintiff was a patron at the franchise restaurant.  Plaintiff was in the company of other minors (young teens) who frequently visited this particular McDonald's restaurant and other "fast-food" establishments.  Plaintiff and his companions were awaiting the arrival of Mr. Groves, father to one of the boys, for a ride back home.  Plaintiff saw what he believed to be the Groves car in the parking lot and exited the south side door of the restaurant to inform Mr. Groves that the boys needed more time.  After exiting plaintiff realized that he was

mistaken—it was not the Groves car.  Plaintiff turned to re-enter the restaurant.  As plaintiff pushed against the door it shattered, resulting in injury to his right hand which has required two corrective surgeries and physical therapy.

Plaintiff, through his parents, filed this action on September 2, 1998 seeking damages.  Plaintiff claims the injury was caused by the negligence of the franchise restaurant operator and/or his employees, but he seeks to hold defendant liable because of the nature of the relationship between defendant and the franchise restaurant.

Specifically, plaintiff alleges there was a "spider crack" in the glass portion of the door for a period of time exceeding two weeks, and that the franchise restaurant operator and/or his employees knew or should have known of this unsafe condition.  As a result, plaintiff claims that the alleged unsafe condition should have been repaired, and that the failure to repair the alleged unsafe condition and the resultant structural weakness in the glass was the proximate cause of his injuries.

Defendant has filed a motion for summary judgment on two grounds.  The first basis for the motion is that the relationship between defendant and the franchise restaurant does not trigger liability on defendant's part.  Specifically, defendant denies that it owed a duty of due care to plaintiff as a result of its landlord/tenant relationship with the franchise restaurant, and it denies that its franchisor/franchisee relationship causes it to be vicariously liable through an agency theory or the doctrine of apparent agency.  Defendant's second claim is that the undisputed facts establish that any negligence on the part of defendant, the franchise restaurant operator and/or his employees, if any there be, cannot be the proximate cause of plaintiff's injury since plaintiff has proffered no expert witness testimony on that point.  The Court has heard oral argument and considered the briefs filed by the parties and the

motion for summary judgment is now in order for decision.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). "When the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Similarly, "summary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991). Summary judgment is only available when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st

Cir.1996). Additionally, the moving party bears the burden of showing that no evidence supports the nonmoving party's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

Under Rhode Island law, to establish a prima facie case of negligence, a plaintiff must show that: (1) the defendant owed a duty of due care to the plaintiff; (2) the defendant breached that duty; (3) the defendant's negligent acts constitute both the actual and proximate cause of the plaintiff's injuries; and (4) the plaintiff has suffered actual damages. *See Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 663 (R.I. 1998); *Russian v. Life–Cap Tire Servs., Inc.*, 608 A.2d 1145, 1147 (R.I.1992); *Dunning v. Kerzner*, 910 F.2d 1009, 1013 (1st Cir.1990)(applying Rhode Island law).

Through the doctrine of respondeat superior, a party can be held vicariously liable for the torts of another. Vicarious liability often arises from a employer-employee relationship or a principal-agent relationship. *See Vargas Mfg. Co. v. Friedman*, 661 A.2d 48, 53 (R.I.1995); *Reccko v. Criss Cadillac Co.*, 610 A.2d 542, 544 (R.I. 1992). ("It is well settled that a corporation is liable in compensatory damages for the tortious conduct committed by its agents while acting within the scope of their authority"). *See also* Restatement (Second) Agency § 214, cmt. a (1958). Plaintiff does not allege the existence of an employer-employee relationship. The issue presented by this motion then, with regard to vicarious liability, is whether defendant can be made liable by application of an agency theory or the doctrine of apparent agency.

### A. Landlord's Duty of Care

The duty of care element of negligence "is an obligation imposed by the law upon a person. It requires that person to conform his or her actions to a particular

standard." *Kuzniar v. Keach,* 709 A.2d 1050, 1055 (R.I.1998).

It is a well-settled rule in the State of Rhode Island that a landlord is not liable for injuries sustained by the guest of a tenant on the tenant's premises, unless the injury results from violation of a duty of maintenance and repair of common passageways with respect to a residential lease, or from the landlord's breach of a covenant to repair in the lease, or from a latent defect known to the landlord but not known to the tenant or guest, or because the landlord has assumed the duty to repair. *See Coppotelli v. Brewer Yacht Yard at Cowesett, Inc.,* 636 A.2d 1326, 1327 (R.I. 1994); *Izen v. Winoker,* 589 A.2d 824, 828 (R.I.1991); *Ward v. Watson,* 524 A.2d 1108, 1109 (R.I.1987); *Corcione v. Ruggieri,* 87 R.I. 182, 139 A.2d 388, 391 (1958); *Whitehead v. Comstock & Co.,* 25 R.I. 423, 56 A. 446, 447 (1903).

None of the above doctrines apply to this case. The lease in question is commercial. It contains no covenant for defendant to repair or maintain the premises. Plaintiff does not claim that the injury resulted from a latent defect known to defendant and not to the franchise restaurant operator. Finally, plaintiff does not claim that defendant, as landlord, assumed a duty to repair the premises. Indeed, the lease contains precise language that the tenant, the franchise restaurant operator, has the duty to maintain and repair the premises. Therefore, as landlord, defendant did not owe a duty of due care to plaintiff in this case.

B. Vicarious Liability

1. Agency

Agency is " 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act.' " *Toledo v. Van Waters & Rogers, Inc.,* 92 F.Supp.2d 44, 52 (D.R.I.2000)(citing *Lawrence v. Anheuser–Busch, Inc.,*

523 A.2d 864, 867 (R.I.1987)(quoting Restatement(Second) Agency § 1(1)(1958))). The Rhode Island Supreme Court has outlined three elements that must be shown in order for an agency relationship to exist: (1) the principal must manifest that the agent will act for him, (2) the agent must accept the undertaking, and (3) the parties must agree that the principal will be in control of the undertaking. *See Rosati v. Kuzman,* 660 A.2d 263, 265 (R.I.1995). *See also, Silvestri v. Pawtucket Mem'l Hosp.,* 1991 WL 789928 at *2 (R.I.Super.). "It is essential to the relationship that the principal have the right to control the work of the agent, and that the agent act primarily for the benefit of the principal." *Lawrence,* 523 A.2d at 867 (citing *Narragansett Wire Co. v. Norberg,* 118 R.I. 596, 376 A.2d 1, 5 (1977)). In contrast, an independent contractor relationship exists where one is retained to perform a task independent of and not subject to the control of the employer. *See Toledo,* 92 F.Supp.2d at 53 (citing *Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285, 289 (1969) and *McAlice v. Safeco Life Ins. Co.,* 1997 WL 839882 at *2 (R.I.Super.), *aff'd,* 741 A.2d 264 (R.I.1999)). Therefore, the key element of an agency relationship is the right of the principal to control the work of the agent. *See Lauro v. Knowles,* 739 A.2d 1183, 1185 (R.I.1999); *Rosati,* 660 A.2d at 265. The critical issue then in determining defendant's liability under an agency theory is whether defendant had the right to control the franchise restaurant operator's activities and operations.

Defendant argues that it cannot be held liable because no agency relationship exists. Defendant relies on a recent Rhode Island Supreme Court case where summary judgment was affirmed for defendant physician on the question of agency in regard to his control of a team of anesthesia personnel. *See Lauro,* 739 A.2d at 1184. However, the Court in *Lauro* reasoned that the evidence of control was insufficient because plaintiff's attorney

admitted that defendant physician did not control the anesthesia personnel and there was no evidence in the record to support the right to control. *See id.* at 1185.

The strongest evidence put forward by defendant that an agency relationship does not exist is the franchise license agreement itself which explicitly states that no agency has been created thereby. However, a party cannot simply rely on statements in an agreement to establish or deny agency. *See Silvestri,* 1991 WL 789928 at *2. Rather, an agency relationship is essentially determined by examining whether there is a right of control of one party over another. *See id.* Further, defendant offers an affidavit from its Senior Corporate Attorney stating on behalf of defendant that defendant does not own, operate, or have a right to control the franchise restaurant.

Plaintiff claims that these representations are hollow since defendant maintains a right to control the operations and management of the franchise restaurant through operational and training manuals, a franchise license agreement, and an operator's lease and license agreement. Additionally, plaintiff claims defendant exercises a right to control through defendant's requirement that the restaurant conform to the McDonald's "comprehensive" system, the frequent and detailed inspections of the premises and its operations, the taking of profits, and the right of defendant to terminate the agreement for material breach.

Other courts have reached different conclusions as to whether these elements of a franchise agreement are sufficient to create an issue of fact regarding the existence of an agency relationship between a franchisor and a franchisee. For example, in *Hoffnagle v. McDonald's Corp.,* 522 N.W.2d 808, 809 (Iowa 1994), on which defendant relies, the Court examined the defendant's right to control the franchisee in the context of determining whether or not the defendant owed a duty of due care to an employee of the franchisee under the employer-independent contractor test contained in the Restatement (Second) of Torts Section 414. The Court, awarding summary judgment to the defendant franchisor, concluded that the defendant's "authority is no more than the authority to insure 'the uniformity and standardization of products and services offered by a [franchisor's] restaurant. [Such] obligations do not affect the control of daily operations.' " *Id.* at 814 (quoting *Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455 N.W.2d 390, 394 (1990)). *See also Folsom v. Burger King,* 135 Wash.2d 658, 958 P.2d 301, 303 (1998).

However, in *Miller v. McDonald's Corp.,* 150 Or.App. 274, 945 P.2d 1107, 1111 (1997), the Court, in examining the existence vel non of an agency relationship between the franchisor and the franchisee, reached the opposite conclusion. The Court noted that the franchise agreement "did not simply set standards that [the franchisee] had to meet. Rather, it required [the franchisee] to use the precise methods that [the franchisor] established.... [The franchisor] enforced the use of those methods by regularly sending inspectors and by its retained power to cancel the [franchise agreement]." *Id.* The Court, denying the defendant franchisor's motion for summary judgment, concluded that such evidence would support a finding that the franchisor had a right to control the franchisee such that an agency relationship existed. *See id.*

The Rhode Island Supreme Court has outlined the indicia for the right to control in an agency relationship. Relevant examples include a principal's beneficial interest in the agent's undertaking, written agreements between the parties, and instructions given to the agent by the principal relating to how to conduct business. *See Baker v. ICA Mortgage Corp.,* 588 A.2d 616, 617 (R.I.1991); *Lawrence,* 523 A.2d at 867.

Because plaintiff has offered the aforesaid evidence to demonstrate defendant's requisite right to control the franchise res-

taurant, and because the Court finds the reasoning in *Miller* more persuasive than that in *Hoffnagle*, the Court concludes that a reasonable jury could find that an agency relationship exists and that defendant can be held vicariously liable. Therefore, on the issue of whether defendant can be held vicariously liable for the negligence of its franchised restaurant under an agency theory, summary judgment must be denied.

### 2. Apparent Agency

Since defendant's motion for summary judgment must be denied because there are disputed issues of fact as to whether the franchise restaurant operator is an agent of defendant, the Court does not need to address the applicability of the doctrine of apparent agency. However, since plaintiff will undoubtedly rely on that doctrine at trial, this Court should give the parties some guidance in that respect.

■ In Rhode Island the doctrine of apparent agency, sometimes called agency by estoppel or ostensible agency, was intended to provide recourse to third parties who justifiably contract under the belief that another is an agent of a principal and detrimentally suffer as a result of that reliance. *See Calenda v. Allstate Ins. Co.,* 518 A.2d 624, 628 (R.I.1986); *Petrone v. Davis,* 118 R.I. 261, 373 A.2d 485, 487 (1977). "The doctrine of apparent agency exists in order to allow third parties to depend on agents without investigating their agency before every single transaction." *Schock v. United States,* 56 F.Supp.2d 185, 193 (D.R.I.1999)(citing *Menard & Co. Masonry Bldg. Contractors v. Marshall Bldg. Sys. Inc.,* 539 A.2d 523, 526 (R.I.1988)). The doctrine also serves the purpose of promoting responsible business practices and protecting third party reliance on reasonable perceptions of a party's agency. *See id.*

In 1993 the Rhode Island Supreme Court extended the doctrine of apparent agency to the realm of torts for the first time in a medical negligence case. The Court quoted the Restatement (Second) Agency § 267 (1958):

'One who represents that another is his [or her] servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he [or she] were such.'

*Rodrigues v. Miriam Hosp.,* 623 A.2d 456, 462 (R.I.1993). *Accord Giamo v. Congress Motor Inn,* 847 F.Supp. 4, 8 (D.R.I.1994). The Court set forth the criteria for determining whether the doctrine of apparent agency applied in a medical-malpractice action against a hospital for the actions of an independent contractor physician:

The patient must establish (1) that the hospital, or its agents, acted in a manner that would lead a reasonable person to conclude that the physician was an employee or agent of the hospital, (2) that the patient actually believed the physician was an agent or a servant of the hospital, and (3) that the patient thereby relied to his detriment upon the care and skill of the allegedly negligent physician.

*Rodrigues,* 623 A.2d at 462. However, the Court did not explicitly state that this legal concept applies to all actions in tort. In fact, when this Court (Torres, J.) recently dealt with the applicability of the doctrine to the tort of misrepresentation, it indicated when commenting on multiple causes of action in a contractual apparent agency case:

By contrast, the applicability of the doctrine of apparent authority is much more limited in tort cases. Ordinarily, a plaintiff who is injured by the negligence of a putative agent would be hard-pressed to demonstrate that the injury resulted from reliance upon the agent's apparent authority.

*Lawton v. Nyman,* 62 F.Supp.2d 533, 538 (D.R.I.1999). The Court also reasoned

that applying apparent agency in a medical malpractice case where a patient submits to treatment in reliance upon the hospital's judgment with respect to the physician's qualifications is justifiable. *See id.* In contrast, a plaintiff who is struck by a vehicle and then claims reliance on the fact that the driver was an agent of the vehicle owner would have a difficult task establishing that reliance. *See id.*

However, there are some situations in which such reliance may be justified and *Rodrigues* indicates that the Rhode Island Supreme Court might extend the doctrine to those situations. For example, Restatement (Second) Agency § 267 (1958) illustrates the following situation: An individual hires a cab because he recognizes the name "ABC Cab Company" on the cab and understands the ABC Cab Company to have a reputation for safe and reliable transportation. However, unknown to the individual, the cab driver is actually an independent contractor who pays a fee to use the ABC Cab Company name and other services. If the cab driver gets into an accident with another car then the cab passenger could possibly hold the ABC Cab Company liable as a principal because of his or her reliance on the apparent agency of the cab driver. However, the driver of the other car could not claim apparent agency because the requisite reliance is not present. *See* Restatement (Second) Agency § 267 cmt. a, illus. 1 (1958).

It is by no means clear that the Rhode Island Supreme Court will apply the doctrine of apparent agency to a franchisor/franchisee situation. But, if it did, clearly it would require the plaintiff to prove: (1) that the franchisor acted in a manner that would lead a reasonable person to conclude that the operator and/or employees of the franchise restaurant were employees or agents of the defendant; (2) that the plaintiff actually believed the operator and/or employees of the franchise restaurant were agents or servants of the franchisor; and (3) that the

plaintiff thereby relied to his detriment upon the care and skill of the allegedly negligent operator and/or employees of the franchise restaurant. *See Rodrigues,* 623 A.2d at 462 (citing *Soar v. Nat'l Football League Players Assoc.,* 438 F.Supp. 337, 342 (D.R.I.1975), *aff'd,* 550 F.2d 1287 (1st Cir.1977)); *Calenda,* 518 A.2d at 628; *Petrone,* 373 A.2d at 487–488.

Other jurisdictions have used similar criteria in applying the apparent agency doctrine to torts in a franchise situation. *See Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 157 (4th Cir.1988)(apparent agency test applied to a hotel franchise relationship); *Gizzi v. Texaco, Inc.,* 437 F.2d 308, 309 (3rd Cir.), *cert. denied* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 57 (1971)(apparent agency test applied to a gas station franchise relationship); *Miller,* 945 P.2d at 1112 (apparent agency test applied to the instant defendant in a similar franchise relationship); *Orlando Executive Park, Inc. v. P.D.R.,* 402 So.2d 442, 449 (Fla.Dist.Ct.App.1981)(apparent agency test applied to a hotel franchise relationship). These cases are instructive but by no means determinative as to what the Rhode Island Supreme Court would do in this case.

The first requirement, whether defendant acted in manner that would lead a reasonable person to conclude that the operator and/or employees of the franchise restaurant were employees or agents of the defendant, was discussed in *Miller.* In *Miller* the plaintiff sought damages for an injury she sustained when she bit into a sapphire stone contained in a sandwich. *See Miller,* 945 P.2d at 1108. The Court described examples of defendant's behavior that could lead a reasonable person to believe that the franchise restaurant was an agent of the defendant franchisor. These included all means and methods that would maintain an "image of uniformity" among all of defendant's restaurants, including "national advertising, common signs and uniforms, common menus, common appearance, and common standards."

*Miller,* 945 P.2d at 1113. *Accord Crinkley,* 844 F.2d at 167; *Gizzi,* 437 F.2d at 310; *Orlando,* 402 So.2d at 449–450.

Plaintiff argues that defendant encourages third persons to think that they are dealing with defendant when they visit one of defendant's franchised restaurants. This belief stems from a customer's difficulty in differentiating between a restaurant that is corporate-owned from one which is franchised. Plaintiff points to defendant's national advertising campaign, highly visible logos throughout the restaurant and on food packaging, a requirement that the employees wear uniforms of designated color, design and other specifications, and volumes of required standards with respect to nearly all aspects of the franchise restaurant's maintenance, appearance, and operation. Seemingly, the purpose of defendant's mandatory procedures and requirements for the appearance and operation of franchised restaurants is to promote uniformity in both product and environment.

Certainly it is arguable that plaintiff, as well as any other customer of defendant's restaurants, would reasonably conclude that the restaurant is owned by defendant and operated by defendant's employees. Because plaintiff has produced enough evidence to support the view that a reasonable person would conclude that the operator and/or employees of the franchise restaurant were employees or agents of defendant, the question must be resolved by the jury.

Second, plaintiff has indicated that he simply went to the franchise restaurant because he and his friends wanted "McDonald's" food, as they had done on numerous occasions. Nowhere does plaintiff indicate that he did or could differentiate a franchised restaurant from a corporate-owned restaurant. Therefore, whether plaintiff actually believed that the franchise restaurant operator and/or his employees were agents of defendant is a question of fact best left for trial and resolution by the jury.

Finally, whether plaintiff relied to his detriment upon the care and skill of the allegedly negligent operator and/or employees of the franchise restaurant again presents a factual issue.

It is obvious that the issue of apparent agency will have to be submitted to the jury and after the jury has answered interrogatories, the Court may decide to certify questions regarding the applicability of the doctrine of apparent agency to this case to the Rhode Island Supreme Court.

C. Proximate Causation

Defendant claims that plaintiff cannot prove that any alleged negligence was the proximate cause of plaintiff's injury in the absence of expert witness testimony. Specifically, defendant claims that it is beyond the common knowledge of a jury of laypeople to infer that the alleged "spider crack" at the bottom of the door was the proximate cause of the injury, and that in the absence of expert testimony the jury would be required to rely on mere conjecture and speculation.

Since defendant's motion for summary judgment was filed, plaintiff has named two expert witnesses in the Materials Science and Human Factors areas to testify that the "spider crack" was the proximate cause of the injury. Therefore, this ground for defendant's motion for summary judgment appears moot. However, it is this Court's opinion that Rhode Island case law supports the view that, even in the absence of expert witness testimony, a jury of laypeople exercising their common knowledge could arrive at the conclusion that the proximate cause requirement is satisfied.

The Rhode Island Supreme Court has articulated that " '[Defendant's] negligence may be established by indirect and circumstantial evidence, and by sufficient proof of other facts and circumstances from which such negligence may be fairly and reasonably inferred.' " *Kurczy v. St. Joseph Veterans Assoc., Inc.,* 713 A.2d 766, 771

(R.I.1998)(citing *Vrooman v. The Shepard Co.*, 57 R.I. 445, 190 A. 452, 454 (1937)). *Accord Hernandez v. Fernandez*, 697 A.2d 1101, 1103 (R.I.1997). Further, "causation is proved by inference" and need not exclude every other possible cause, but must be based on reasonable inferences drawn from facts in evidence. *Skaling v. Aetna Ins. Co.*, 742 A.2d 282, 288 (R.I.1999)(quoting *Cartier v. State*, 420 A.2d 843, 848 (R.I.1980)).

The Rhode Island Supreme Court has consistently held that only where the subject matter is particularly complex or peculiar is expert witness testimony necessary to assist the jury. *See Morgan v. Washington Trust Co.*, 105 R.I. 13, 249 A.2d 48, 51 (1969)(expert testimony of architect allowed despite general rule excluding expert opinions to explain complex engineering principles of improper door installation and resultant dangerous vacuum condition in vestibule).

> The use of expert testimony arises from a need which comes in turn from the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the average layman. If all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony.

*Barenbaum v. Richardson*, 114 R.I. 87, 328 A.2d 731, 733 (1974).

Plaintiff has offered evidence by way of witness deposition that a "spider crack" existed in the glass door for over two weeks, and that the glass in the door broke when plaintiff pushed on it causing plaintiff's injury. This is not an esoteric or exceedingly complex notion. It is difficult to imagine that a jury of laypeople, exercising their common knowledge, would not have the ability to reasonably infer that cracked glass in a glass door breaks when pressure is applied to it.

In support of its argument, defendant mistakenly relies on a line of cases where the Court had no evidence as to the cause of the accident, and affirmed summary judgment for the defendant. *See Hernandez*, 697 A.2d at 1103–1104 (no evidence to determine from which tree a branch fell and damaged plaintiff's car during hurricane); *Grande v. Almac's Inc.*, 623 A.2d 971, 972 (R.I.1993)(no evidence that defendant supermarket caused defect in sidewalk which allegedly resulted in plaintiff's fall); *Russian*, 608 A.2d at 1147 (no evidence as to how plaintiff fell in garage). Hence, these cases are distinguishable from the case at bar.

This Court concludes that a jury, by examining circumstantial evidence and drawing inferences therefrom, can conclude that the spider crack in the glass door in this case was the proximate cause of plaintiff's injuries without the assistance of expert witness testimony.

IV. Conclusion

For the preceding reasons, defendant's motion for summary judgment is denied. It is so ordered.