373 A.2d 485.

TIMOTHY J. C. PETRONE *et al. vs.* HENRY DAVIS *et al.*

MAY 13, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

262

Doris, J. This case comes to us on appeal from a Superior Court judgment which granted compensatory damages but denied punitive damages in the plaintiffs' suit for breach of contract.

The plaintiffs are a group of young musicians who work together under the name of "The Laurence Talbot Band." They allegedly entered into an oral contract with Richard Allen, agent for the owner of the "Stepping Stone Ranch", to put on a concert at the ranch on May 18, 1975. The terms of the contract were $600 payable by April 18, one month before the concert, and $600 payable after the concert, for a total of $1,200.

Several of plaintiffs testified that the $1,200 payment actually reserved the ranch for the entire weekend of May 16-18, 1975, so that no other concert would be held in competition with plaintiffs' planned concert. They testified that the owner of the ranch, Henry Davis,[1] made the gratuitous offer to reserve the entire weekend on April 9, 1975, apparently to insure a successful concert and a continuing friendly relationship with plaintiffs. Although Davis denied making this offer, it is relevant insofar as it goes to show he was aware that a contract had already been made by plaintiffs with his agent, Richard Allen, for May 18, 1975.

The plaintiffs, in reliance on the contract, had also entered into contracts with other bands to appear on the same program, made preliminary arrangements for posters, tickets and media advertising, and contracted for the rental of expensive new sound and light equipment. Subsequently, around April 10, 1975, plaintiffs discovered that their date had been preempted by a nationally known group called the "Guess Who."

Timothy J.C. Petrone, the apparent spokesman for plaintiff band members, then had several telephone conversations with Richard Allen and endeavored to negotiate with Frank J. Russo, the organizer of the "Guess Who" concert, in an attempt to reach an amicable arrangement. Petrone testified that he might have been willing to give up the May 18 date in exchange for certain concessions on Russo's part. In particular, Petrone wanted to have his band perform for compensation along with the "Guess Who", get "billing" in the preconcert advertising, and be released from other contracts without liability.

---

[1] The record indicates that the Stepping Stone Ranch is owned jointly by Henry Davis and his wife. Davis testified that a portion of the ranch is leased to Stepping Stone Enterprises, Ltd., a corporation whose stock is also owned jointly by Davis and his wife.

However, Russo would not agree to Petrone's terms and the negotiations ended without any settlement being reached.

Petrone and several other members of the band then went to the Stepping Stone Ranch on April 14, 1975, to see Henry Davis and try to clarify matters. The record indicates that Davis was fully aware of the problem, and even tried to get plaintiffs to sign a release. The plaintiffs refused to do this and left the ranch without any assurance as to the status of their alleged contract. In order to finally determine their position, plaintiffs returned to the ranch on April 17, the day before the $600 initial payment would have been due, with a check for $600 and a written contract for Davis to sign. Davis refused to sign the contract and also refused to accept tender of the $600 check. The plaintiffs thereupon instituted suit on May 9, 1975, against Davis, Russo, Allen and the Stepping Stone corporation, for breaching the contract.

The plaintiffs, in addition to asking for compensatory and punitive damages, asked for an injunction preventing any other concert except their own from taking place at the Stepping Stone Ranch during the weekend of May 16-18, 1975. The hearing on a preliminary injunction was, by stipulation of all parties, considered on the merits, and was heard by a Superior Court justice sitting without a jury.

After finding in favor of defendants, Richard Allen and Stepping Stone Enterprises, Ltd.,[2] the trial justice found for plaintiffs against defendants, Henry Davis and Frank J. Russo. However, he denied injunctive relief and punitive damages and gave only compensatory damages to plaintiffs. The damages awarded were $2,250 against de-

---

[2]The trial justice found that the corporation had never been mentioned in the contract negotiations until after suit was brought and therefore was not a party to this action, a conclusion with which we concur.

fendant, Henry Davis, for breach of contract, and $2,250 against defendant, Frank J. Russo, for intentional interference with contractual relations. Recovery was limited, however, to a total of $2,250, which could be collected in any combination from the two defendants. The defendants, Davis and Russo, have appealed from this judgment awarding damages, and plaintiffs appeal from the portion of the judgment denying punitive damages.

We first note that defendant Russo's appeal has already been dismissed for failure to comply with a previous order of this court in this case, and for failure to comply with Rule 16(a). *Petrone* v. *Davis*, 117 R.I. 1000, 370 A.2d 1288 (1977). As to the appeal of defendant Davis, the only question before us is whether Davis was bound by a valid oral contract with plaintiffs. If such a contract existed, there is no question that Davis breached it by taking away the proposed concert date and by refusing tender of the initial payment.

The trial justice found that although both Henry Davis and Richard Allen denied that Allen had authority to bind Davis to contracts, a reasonable person would have been led to believe that he had such authority. Thus, even if Allen did not have actual authority, the trial justice found that he had apparent authority to act for Davis and bind him to an oral contract. He further found, dispite defendants' disclaimers, that Allen had not merely negotiated with plaintiffs but had actually entered into an oral contract upon which plaintiffs relied and of which Davis was aware.

In reviewing the findings of fact of a trial justice we have said:

> "We accord those factual determinations great weight, and will not disturb them unless satisfied that they are based upon an oversight or misconception of material evidence or unless they are otherwise clearly

wrong." *Noonan* v. *Newport Ready Mix Concrete, Inc.,* 107 R.I. 646, 647, 270 A.2d 83, 83 (1970).

And we have also noted that the existence and scope of an agency relationship is essentially a factual determination. *American Underwriting Corp.* v. *Rhode Island Hosp. Trust Co.,* 111 R.I. 415, 420, 303 A.2d 121, 124 (1973).

Here it is unquestionable that Allen did everything that would lead reasonable people to believe he was acting as the agent of the owner of the ranch with authority to enter into a contract on the owner's behalf. He negotiated for a date and payment terms, and even helped plaintiffs in planning the concert and advertising. Furthermore, it was evident from plaintiffs' meetings with the owner that this was all being done with the owner's knowledge and approval. It was only after the other group came into the picture that the owner, in attempting to avoid liability to plaintiffs, asserted that he only dealt in written contracts, that Allen had no right to make these contracts, and that the initial payment should have been made in cash.

In addition, we reject defendants' argument that the contract was illusory. This was not merely a case where plaintiffs had the option of making the $600 payment only if they wanted to accept the offer to lease the ranch. The plaintiffs were bound as well as the defendants and if they failed to make the initial $600 payment, they would have been in breach of contract.

It is perfectly clear that the trial justice was correct in his finding of apparent authority to enter into contracts, and he did not overlook or misconceive any material evidence. Therefore, defendant owner is liable to plaintiffs for breach of contract.

The plaintiffs' appeal on the issue of punitive damages is limited to the claim against defendant Russo for committing the intentional tort of interference with contrac-

tual relations. The trial justice found that no punitive damages should be awarded because Russo did not act maliciously, that is with the motive of hurting plaintiffs. The plaintiffs claim that this was an incorrect standard in view of our decision in *Smith Devel. Corp.* v. *Bilow Enterprises, Inc.,* 112 R.I. 203, 208-09, 308 A.2d 477, 480 (1973), where we said:

> "[I]t is now well established that the terms 'malicious' and 'malice' do not mean that proof is required of a defendant's malevolence, spite, or ill will towards the contracting party or parties, but rather that the words 'malicious' and 'malice' signify an unjustified interference by one with the contractual relationship of others. Prosser, *Torts* §129 at 927-28 (4th ed. 1971)."

Even if the trial justice erred in his finding of lack of malice, however, it does not necessarily follow that punitive damages should have been awarded since such an award is discretionary.

> "Whether plaintiff is entitled to punitive damages, once the court has determined the case to be a proper one for such an award, is left to the *discretion* of the trier of fact." *Sherman* v. *McDermott,* 114 R.I. 107, 108-09, 329 A.2d 195, 196 (1974).

The plaintiffs have failed to provide us with a transcript from which we could review the testimony of Russo and ascertain whether the trial justice abused his discretion in not granting punitive damages. As an appellant, it was the plaintiffs' responsibility to provide this transcript,[3] and

---

[3] Apparently the plaintiffs assumed that a complete transcript was ordered by the defendants. However, the defendant Davis ordered only a partial transcript which did not include the testimony of Russo. Davis should have notified the plaintiffs that only a partial transcript was filed and risked dismissal of his appeal by failing to provide such a notice. Sup.Ct. R. 10(b); Sup.Ct. R. 3(a). This did not affect the plaintiffs' responsibility to supply a transcript in accordance with Sup.Ct. R. 10(b), since, as to the issue of punitive damages, the plaintiffs were the appellants, and the appellants are responsible for transcripts on appeal.

without such transcript we are unable to consider the issue of the trial justice's discretion. *See State* v. *Jennings,* 117 R.I. 291, 366 A.2d 543 (1976). Therefore, we must dismiss the plaintiffs' appeal without reaching this issue.

The defendants' appeal is denied and dismissed, the plaintiffs' appeal is denied and dismissed, the judgments appealed from are affirmed and the case is remanded to the Superior Court.

*Alan H. Pearlman,* for plaintiffs.

*Aram K. Berberian,* for defendants.