[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the motion of Defendant South County Hospital[1] for summary judgment pursuant to Super. R. Civ. P. 56. This Court heard oral arguments on the motion on August 16, 2004.
Facts/Travel
On March 15, 1998, Joyce Zinsser, was discovered unconscious in her home by emergency medical service personnel. She regained consciousness while in route to the South County Hospital Emergency Room. Ms. Zinsser was examined in the emergency room and subsequently admitted to the Intensive Care Unit. While at South County Hospital, Ms. Zinsser was examined and treated by several doctors including Dr. McNiece, Dr. Damle, Dr. Black, and Dr. Broza. After undergoing a number of tests including CT scan of chest and abdomen, echocardiogram, stress test, thallium imaging, she was discharged on March 18, 1998. On March 19, 1998, Ms. Zinsser died of an aortic dissection.
The plaintiff, John L. Sheldon, decedent's common law husband, filed suit against Dr. McNiece, Dr. Damle, Dr. Black, Dr. Broza, and South County Hospital, alleging that the decedent's death was the result of the doctors' negligence and that South County Hospital is vicariously liable under the doctrine of apparent authority.[2]
South County Hospital now moves for summary judgment.
Relevant to the present motion are the actions of South County Hospital and the relationship between the Hospital and Dr. Black. At the time of the alleged negligence, Dr. Black, a radiologist, was employed by X-Ray Associates. Dr. Black spent approximately 50% of his time at South County Hospital interpreting x-rays, CT scans, and MRIs. In 1998, South County Hospital owned, along with other members of a consortium, the CT scanner located at South County Hospital. South County Hospital provided the supplies as well as the policy and procedure manuals for the diagnostic imaging department. According to a 1999 contract (there was no written contract in 1998), X-ray Associates had the exclusive right to do radiological interpretation at South County. Furthermore, the contract states that X-ray Associates has the exclusive right to perform "all Radiology Services which the Hospital makes available to inpatients and outpatients." The name "X-ray Associates" did not appear anywhere in South County Hospital. The decedent's x-ray and CT scan reports were entitled "South County Hospital." Nowhere on the reports does the name "X-Ray Associates" appear. John Sheldon believed that the radiology services were provided by South County Hospital and he does not believe his wife had any information to the contrary.
Summary Judgment
During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville RacingAssociation, 603 A.2d 317, 320 (R.I. 1992) (citingLennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts." Id. The Court's purpose during the summary judgment procedure is issue finding, not issue determination. Industrial National Bank v. Peloso,121 R.I. 305, 397 A.2d 1312, 1313 (1979). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. A trial justice may properly grant summary judgment only when, after reviewing the evidence in light most favorable to the non-moving party, the trial justice concludes that no genuine issue of material fact exists and the moving party's claim warrants judgment as a matter of law. R.I. Super. R. Civ. P. 56(c); Harritos v. Cambio,683 A.2d 359 (R.I. 1996).
In support of its motion for summary judgment, South County Hospital avers that the treating doctors were all independent contractors and that the hospital is not liable under the theory of apparent authority. Specifically, the Hospital avers that at no time were any affirmative representations or suggestions made by any actual employee or representative of South County Hospital to indicate that any of the defendant physicians were acting as agents of the hospital. In support of this proposition, the Hospital points to the deposition testimony of the plaintiff, John Sheldon, in which the plaintiff appears to state that he was aware that the defendant physicians were not employed by the Hospital.
Furthermore, South County Hospital avers that the plaintiff can not support a claim under the doctrine of apparent authority because there is no evidence that the decedent herself actually believed and relied on her belief that the defendant physicians were agents, servants, or employees of the Hospital. Moreover, the Hospital urges that Ms. Zinsser's death prohibits such direct evidence.
The Plaintiff counters the hospital's argument by averring that South County Hospital's involvement in this case is based on the Hospital's provision of radiology services and its relationship with Dr. Black. The Plaintiff avers that Dr. Black and his employer — X-Ray Associates — were not independent contractors but agents/employees of the Hospital.
The Plaintiff counters the Hospital's claim that there is no direct evidence that the decedent relied on any acts of the Hospital, by averring that the plaintiff could, and should be allowed to, provide indirect evidence of the decedent's beliefs. This would prevent the incongruous result of allowing a patient who survives a negligent encounter to recover, while barring a severely impaired or deceased patient.
Finally, the plaintiff avers that the factual basis for the Hospital's motion is insufficient. South County Hospital relies on the deposition testimony of John Sheldon to support its claim that the physicians were all independent contractors and that Sheldon, and thus the decedent, were aware of this. However, Sheldon's deposition testimony is not as clear as the Hospital would have it appear. Sheldon repeatedly indicates that he is unsure of the "setup" and believes there is some sort of oversight by the Hospital.
Apparent Authority
In Rhode Island the doctrine of apparent agency was intended to provide recourse to third parties who justifiably contract under the belief that another is an agent of a principal and detrimentally suffer as a result of that reliance. Butler v. McDonald's Corp.,110 F. Supp.2d 62, 68 (D.R.I. 2000) (citing Calenda v.Allstate Ins. Co., 518 A.2d 624, 628 (R.I. 1986);Petrone v. Davis, 118 R.I. 261, 373 A.2d 485, 487 (R.I. 1977)). "The doctrine of apparent agency exists in order to allow third parties to depend on agents without investigating their agency before every single transaction." Schock v. United States.,56 F. Supp.2d 185, 193 (D.R.I. 1999) (citing Menard Co. Masonry Bldg. Contractors v. Marshall Bldg. Sys.Inc., 539 A.2d 523, 526 (R.I. 1988)).
The RI Supreme Court extended the doctrine of apparent authority to medical malpractice actions in Rodriguesv. Miriam Hosp., 623 A.2d 456, 462 (R.I. 1993). The Court recited Agency § 267[3] and stated "[v]iewing the restatement in conjunction with prior Rhode Island case law, we believe that an individual must satisfy the following three criteria in order to sustain a medical-malpractice action against a hospital based on apparent authority. The patient must establish (1) that the hospital, or its agents, acted in a manner that would lead a reasonable person to conclude that the physician was an employee or agent of the hospital, (2) that the patient actually believed the physician was an agent or a servant of the hospital, and (3) that the patient thereby relied to his detriment upon the care and skill of the allegedly negligent physician." Rodriguesv. Miriam Hosp.,[4] 623 A.2d 456, 462; see also Georgev. Fadiani, 772 A.2d 1065, 1069 (R.I. 2001); Butler v.McDonald's Corp., 110 F. Supp.2d 62, 68 (D.R.I. 2000).
Such a determination necessarily involves afact-intensive inquiry. "Crucial to any such determination is the manner in which the medical professionals conduct themselves or hold themselves out."Fadiani, 772 A.2d at 1069.[5] Against this backdrop of controlling case law, we revisit the facts offered by the Plaintiff. Plaintiff points to the fact that the CT scan was ordered on a South County Hospital form. The CT scan was performed in South County Hospital with a Hospital owned scanner. The CT scan was entitled a South County Hospital report. The name "X-Ray Associates" did not appear anywhere in the Hospital in 2003, and there is no evidence that the name appeared anywhere in the Hospital in 1998.
South County Hospital avers that in the present case, as Ms. Zinsser is deceased, it is impossible for the Plaintiff to prove the decedent's actual belief and her reliance on that belief.[6] This Court refuses to adopt such a harsh application of the test for apparent authority. As another court has noted, a strict application of the reliance requirement is inappropriate in the hospital context because
 in some cases, the patient might be so severely impaired as to be incapable of communicating or may not survive the negligent acts of an independent contracting physician. In those cases it would be nearly impossible to prove that the patient actually relied on the hospital's holding the physician out as an employee of the hospital. It would be incongruous to allow a patient who survives a negligent encounter relatively intact to recover because she or he is able to testify whether she or he actually relied, but not allow a severely impaired or deceased patient to recover because she or he is unable to recount what her or his actual belief was. Jennison v. Providence St. Vincent Medical Center, 25 P.3d 358, 367 (Or.App. 2001).
Furthermore, this Court notes that it is reasonable to assume that a person in Ms. Zinsser's position would not have known that a radiologist, a physician she never met nor had any knowledge of, would be anything other than an employee of hospital. "The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital and the various medical personnel operating therein. . . . Public policy dictates that the public has every right to assume and expect that the hospital is the medical provider it purports to be." Clark v. Southview Hospital Family HealthCenter, 68 Ohio St.3d 435, 628 N.E.2d 46, 53 (1994).
It seems readily apparent that there remain issues of fact regarding apparent authority. Even though the decedent was found unconscious and had no say in being transported to the South County Hospital Emergency Room or in choosing her initial doctor, she did remain at South County Hospital for three days — indicating possible reliance on the Hospital and "its" physicians. The Plaintiff points out several facts regarding the relationship between the Hospital and X-Ray Associates that could lead a reasonable person to conclude that the radiology services were performed by an agent of employee of the hospital. Additionally, although there is no direct evidence from the decedent as to what she believed and relied on, the Plaintiff should be allowed to submit circumstantial evidence (conversations with her husband, other doctors, etc.) as to this point, otherwise, as the Plaintiff points out, an incongruous situation would be created whereby a dead or incapacitated plaintiff could never prove apparent authority.
This Court is not finding that Plaintiff presented conclusive evidence as to the issue of apparent authority. A jury may ultimately reject this contention, but such a determination is one for the fact finder. "The function of the motion justice considering a proposed summary-judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried. Rather, only if the case is legally dead on arrival should the court take the drastic step of administering last rites by granting summary judgment." Mitchell v. Mitchell, 756 A.2d 179, 185 (R.I. 2000). This case is not "dead on arrival." The record before the Court reveals contested, as well as undisputed facts, which bear on the elements of proof crucial to Plaintiff's claims. The Court finds that the evidence reveals a genuine dispute of material fact such that a reasonable fact finder could resolve the factual controversy.
Conclusion
After a review of all the facts, pleadings, depositions, and all other relevant documents submitted to this Court and after reviewing that evidence in the light most favorable to Plaintiff, the nonmoving party, the Court finds that the defendant is not entitled to summary judgment.
Therefore, the Defendant, South County Hospital's motion is hereby denied.
The attorney for the Plaintiff will submit the appropriate judgment.
[1] This Court, where appropriate, will refer to South County Hospital as the "Hospital."
[2] Dr. McNiece was voluntarily dismissed from the case on or about March 15, 2003.
[3] As an aside, both parties quibble over apparent authority, ostensible authority and so on. There is a great deal of confusion among courts regarding the elements and application of "apparent authority," "ostensible agency," and "agency by estoppel" in a medical malpractice setting³ This inconsistent application and myriad of labels not only confuses and misleads, it also arguably creates a judicial nescience which results in a misapplication of the law. Courts across the nation have failed to recognize the distinction between Agency § 267³ and Torts § 429³ Agency § 267 requires a plaintiff to show: (1) actual reliance on the identity of the principal; and (2) that this reliance caused the plaintiff to be exposed to the negligent conduct. Torts § 429 is a more lenient standard than Agency § 267 as it does not require an estoppel. Instead, Torts § 429 requires proof of a "holding out" by the apparent principal which would lead a reasonable person to conclude an agency relationship existed.
In a medical malpractice setting, Agency § 267 requires a plaintiff to show: (1) a representation by the hospital that the allegedly negligent physician is his servant or agent; and (2) the plaintiff, or injured party, must justifiably rely upon the skill or care of the apparent agent to his detriment. Comment a to Agency § 267 specifically sets forth that an injured party's belief that an actor (physician) is the defendant's (hospital) servant is insufficient to impose liability. Comment a further states, "[t]here must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct." The second prong of Agency § 267 clearly requires a plaintiff to show actual reliance upon the apparent authority of the hospital to control the allegedly negligent physician.See 9 J.L. Health 319, 341. Alternately, § Torts § 429 requires a showing that the plaintiff accepted the independent contractor's services under the reasonable belief that the care was being provided by the employer (hospital) or by servants (physicians) of the employer. Comment a to Torts § 429 expands this section's provisions by stating that liability may also be found where a third party held the requisite reasonable belief and procured the services in question on behalf of the injured party.
Many courts, when initially faced with claims of "apparent authority"/"ostensible agency"/"agency by estoppel" in a hospital setting, claim to adopt Agency § 267, but erroneously negate the requisite element of reliance. These courts fail to recognize that they actually adopted Torts § 429, the more lenient standard. This negation results in an abrogation of Agency § 267 and, moreover, a means by which a state can hold a hospital, in essence, strictly liable for negligent treatment by their physicians retained as independent contractors. See 9 J.L. Health 319, 337.
One commentator has stated that only two jurisdictions, Massachusetts and Rhode Island, have deviated from the national trend of abrogating Agency § 267 by inferring reliance from the alleged "holding out" of modern hospitals as providers of complete, competent medical care. InChase v. Independent Practice Ass'n, 583 N.E.2d 251 (Mass. Ct. App. 1991), the Massachusetts Court of Appeals refused to find an HMO (Health Maintenance Organization) vicariously liable under "agency by estoppel," but did conclude that HMO's are subject to this doctrine. The Chase court denied liability on the grounds the plaintiff did not have an actual belief that the physician at issue was an employee or agent of the HMO and, thus, could not prove reliance on the apparent agency. Id. at 255. Although the Chase court labeled the action as based on "`ostensible' or `apparent' agency," the Chase applied the correct test under Agency § 267. Similarly, Rhode Island also strictly construed Agency § 267 in Rodrigues v. Miriam Hospital, see above. "Viewing the restatement [§ 267] in conjunction with prior Rhode Island case law, we believe that an individual must satisfy the following three criteria in order to sustain a medical-malpractice action against a hospital based on apparent authority . . ."
[4] The Rodriques Court found that a reasonable person could not conclude that plaintiff was relying on the care and skill of the treating doctor or that the plaintiff was confused about the doctor's status as an independent physician. Rodrigues, 623 A.2d at 462. The Court noted that "a thorough review of the record failed to uncover the slightest evidence that plaintiff was laboring under the actual belief that [the defendant doctor] was in any way connected to the hospital staff." Id.
[5] In the two R.I. cases dealing with this issue — Rodrigues andFadiani — the court addressed this issue in different procedural postures. In Rodrigues, the court granted the hospitals renewed motion for a directed verdict after the jury had returned a verdict against the hospital. In Fadiani, the superior court granted summary judgment to the hospital — and the Supreme Court reversed that decision, stating that such a determination necessarily involves a fact-intensive inquiry.
[6] Other jurisdictions have held that the reliance element is established when the plaintiff "looks to" the hospital for services, rather than to an individual physician. See Butler v. Domin, 2000 MT 312,302 Mont. 452, 15 P.3d 1189, 1196 (Mont. 2000); Simmons v. TuomeyRegional Medical Center, 533 S.E.2d 312, 322 (S.C. 2000); Pamperin v.Trinity Memorial Hosp. 423 N.W.2d 848, 857 (Wis. 1988); Jackson v.Power, 743 P.2d 1376, 1380 (Ala. 1987). However, reliance need not be proven by direct testimony. See Clark, 628 N.E.2d at pp. 52-53; Jackson,
743 P.2d at 1382, fn. 10; see also Pamperin, 423 N.W.2d at 857 ["[I]f a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself."]. In fact, many courts presume reliance, absent evidence that the plaintiff knew or should have known the physician was not an agent of the hospital. Butler, at 15 P.3d p. 1197; Sword v. NKCHospitals, Inc., 714 N.E.2d 142, 152 (Ind. 1999). However, as noted there is a muddling of the tests for apparent authority among various jurisdictions.