**Irene CALDERONE, individually and as Executrix of the Estate of Joseph Calderone**

v.

**KENT COUNTY MEMORIAL HOSPITAL and John Isaac, M.D.**

**C.A. No. 02–346ML.**

United States District Court, D. Rhode Island.

March 21, 2005.

David G. Morowitz, Providence, RI, for Plaintiff.

Michael G. Sarli, Matthew D. Rocheleau, Stephen J. Brouillard, Gidley, Sarli & Marusak, John J. Barton, Robert M. Elmer, Esq., Taylor, Duane, Barton & Gilman, LLP, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter is presently before the Court on the motion of the defendant Kent County Memorial Hospital ("Kent" or "the hospital") for judgment as a matter of law on the issue of apparent agency. The Court orally denied the hospital's motion on March 16, 2005, and indicated that a written decision elucidating the Court's reasons for the denial would follow.

Jury trial of this action commenced on March 1, 2005. At the conclusion of plaintiff's presentation of her evidence, Kent, pursuant to Fed.R.Civ.P. 50(a), moved for judgment as a matter of law on two issues. First, the hospital sought entry of judgment in its favor on the issue of whether Barry Mellow, M.D. ("Dr.Mellow"), the

physician who treated the decedent, Joseph Calderone ("Mr. Calderone" or "the decedent"), in Kent's emergency room on March 17, 2002, was an apparent agent of the hospital. Second, Kent sought judgment in its favor on plaintiff's loss of consortium claim. The defendant John Isaac, M.D. ("Dr.Isaac"), made a motion pursuant to Rule 50(a), challenging the legal sufficiency of the evidence presented by plaintiff on the issues of standard-of-care and causation. Also, Dr. Isaac joined in Kent's motion with regard to plaintiff's loss of consortium claim. Kent joined in Isaac's Rule 50 motion.

The Court took the defendants' Rule 50 motions under advisement and the defendants proceeded to present their evidence. At the conclusion of all evidence, the defendants renewed their Rule 50 motions. The Court granted the defendants' motion with regard to plaintiff's loss of consortium claim and denied Kent's Rule 50 motion on the apparent agency issue. The case was then submitted to the jury. The jury returned a verdict in favor of both defendants. Following the jury's verdict, the Court denied the remaining Rule 50 motion. The Court now sets forth the basis for its denial of Kent's motion on the apparent agency issue.

■■■ In ruling on a motion for judgment as a matter of law, the trial court must "scrutinize the proof and the inferences reasonably to be drawn therefrom in the light most amiable to the nonmovant." *Gibson v. City of Cranston*, 37 F.3d 731, 735 (1st Cir.1994). In so doing, "the court may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of evidence." *Id.* The trial court may enter judgment as a matter of law, "only if the evidence, viewed from the perspective most favorable to the nonmovant, is so one-sided that the movant is plainly entitled to judgment, for reason-

able minds could not differ as to the outcome." *Id.*

In *Rodrigues v. Miriam Hosp.*, 623 A.2d 456 (R.I.1993), the Rhode Island Supreme Court addressed the applicability of the doctrine of apparent authority to medical malpractice actions. In that case, the plaintiff patient had presented to Miriam Hospital's emergency room with breathing difficulties and was seen by a resident physician. The plaintiff's two primary-care physicians subsequently arrived in the emergency room and intervened in the patient's treatment. One of the primary-care physicians countermanded a medication order that had been made by the resident physician. The three physicians agreed that an ear, nose and throat ("ENT") specialist should be called in to examine plaintiff. A specialist recommended by one of plaintiff's primary-care physicians was summoned with the concurrence of the other primary-care physician. The specialist recommended that the patient undergo an immediate tracheostomy but refused to perform the procedure himself, stating that he was not qualified to do so. A delay ensued while a surgeon was summoned. In the interim, the plaintiff experienced respiratory failure. An emergency tracheostomy was then performed.

Thereafter, the patient instituted suit against the hospital contending that she had sustained brain damage as a result of oxygen deprivation. The plaintiff, *inter alia,* sought to hold the hospital liable for the specialist's alleged negligent refusal to perform the procedure. Specifically, the plaintiff contended that the ENT specialist was an apparent agent of the hospital. The hospital moved for a directed verdict and the superior court reserved decision. Following a jury verdict in favor of plaintiff, the trial court granted the hospital's renewed directed verdict motion. With respect to the issue of apparent authority,

the trial justice found that there was no evidence to support a conclusion that the specialist was the hospital's agent. In particular, the trial justice noted that the specialist had not been held out as an agent of the hospital and had not been consulted as an on-call physician of the hospital's ENT department. Rather, the specialist had been selected by the plaintiff's primary-care physicians. The plaintiff appealed.

■ Viewing the Restatement (Second) Agency § 267 in conjunction with prior case law governing the applicability of the apparent authority doctrine in contractual transactions, the supreme court articulated the criteria that a patient must satisfy in order to successfully invoke the doctrine against a hospital in a medical malpractice action. *Id.* at 462.

The patient must establish (1) that the hospital, or its agents, acted in a manner that would lead a reasonable person to conclude that the physician was an employee or agent of the hospital, (2) that the patient actually believed the physician was an agent or a servant of the hospital, and (3) that the patient thereby relied to his detriment upon the care and skill of the allegedly negligent physician.

*Id.* (citing *Soar v. Nat'l Football League Players' Ass'n,* 438 F.Supp. 337, 342 (D.R.I.1975); *Calenda v. Allstate Ins. Co.,* 518 A.2d 624, 628 (R.I.1986); *Petrone v. Davis,* 118 R.I. 261, 265–66, 373 A.2d 485, 487–88 (1977)).

Applying the three criteria, the supreme court affirmed the trial court's grant of a directed verdict in favor of the defendant hospital on the issue of apparent authority. *Id.* In so doing, the supreme court noted that the record was devoid of the "slightest evidence" that the plaintiff actually believed that the ENT specialist was "in any way connected" to the hospital's staff. *Id.* In fact, in her interrogatories, the plaintiff

indicated that one of her primary-care physicians had informed her that he was calling the particular ENT physician. *Id.* Accordingly, "a reasonable person could not conclude that plaintiff ... was confused about the [ENT specialist's] status as an independent physician." *Id.* Moreover, there was no evidence that the plaintiff had relied on the specialist's care and skill. *Id.*

In seeking judgment as a matter of law in the instant proceeding, Kent asserted that the plaintiff could not satisfy the second and third prongs of the *Rodrigues* rubric. Specifically, the hospital contended that there was insufficient evidence from which a reasonable jury could conclude that Mr. Calderone actually believed that Dr. Mellow was an employee or agent of the hospital, or that the decedent relied to his detriment on that belief.

■ A determination as to whether a plaintiff has satisfied the *Rodrigues* criteria "necessarily involves a fact-intensive inquiry." *George v. Fadiani,* 772 A.2d 1065, 1069 (R.I.2001). Here, there was sufficient evidence adduced at trial by plaintiff from which a reasonable jury could infer that Mr. Calderone believed that Dr. Mellow was a hospital physician and that Mr. Calderone relied on that understanding. Accordingly, the issue of whether Dr. Mellow was an apparent agent of the hospital was one properly presented to the jury for determination.

It is undisputed that Dr. Mellow was not an employee of the hospital on March 17, 2002. At trial, both Dr. Mellow and Robert Dinwoodie, M.D. ("Dr.Dinwoodie"), the chief of Kent's emergency department, testified that Dr. Mellow was an employee of a separate corporation, "Kent Emergency Physicians, Inc." ("the corporation"). In fact, Dr. Dinwoodie testified that all physicians who work in Kent's emergency de-

partment are employees of the corporation rather than of the hospital itself. The corporation has a "service understanding" with the hospital by which the corporation provides physician staffing for the hospital's emergency room.

Although they are not hospital employees, all emergency room physicians are members of the hospital's medical staff. Only physicians who have been granted staff privileges by Kent are permitted to treat patients in the hospital. The hospital's credentials committee is responsible for granting and denying medical staff privileges.

The hospital owns the emergency room and most of the equipment contained therein. Dr. Dinwoodie is a Kent employee and bears overall responsibility for maintaining an appropriate level of patient care, including adequate staffing, in the emergency department. However, Dr. Dinwoodie does not supervise the fully-credentialed physicians who practice within the department while they are performing medical services.

The hospital does not require emergency department physicians to inform patients of their status as non-Kent employees. The hospital does not have a procedure for doing so. It is not a routine practice for the emergency room doctors to inform patients of their employment status. Dr. Mellow testified that he did not tell the decedent or any member of the Calderone family that he was a non-hospital employee and that he did not do anything that would have led the Calderones to believe that he was not employed by the hospital.

Leonard Calderone, the decedent's son, testified that Dr. Mellow introduced himself as the emergency room physician who would be attending to his father. Leonard Calderone recalled that Dr. Mellow was wearing some kind of "personnel-type" identification.

Considered in its entirety, the above-described testimony provided a more than ample basis from which the jury could reasonably infer that the decedent believed that Dr. Mellow was a hospital employee or agent. Moreover, the jury could reasonably infer that Mr. Calderone, by presenting to Kent's emergency department and consenting to treatment by a physician who identified himself as the emergency room doctor, was relying on the hospital itself to provide appropriate medical care to him through its staff. See e.g., Gilbert v. Sycamore Mun. Hosp., 156 Ill.2d 511, 525–26, 190 Ill.Dec. 758, 622 N.E.2d 788, 796 (1993) (quoting Pamperin v. Trinity Mem. Hosp., 144 Wis.2d 188, 211–12, 423 N.W.2d 848, 857 (1988)) (justifiable reliance where patient seeks emergency care from a hospital rather than from a specific physician); Mehlman v. Powell, 281 Md. 269, 274, 378 A.2d 1121, 1124 (1977) (patient seeking emergency services from a hospital was relying on the hospital to provide them); see also Nelson v. Debbas, 160 Md.App. 194, 211–12, 862 A.2d 1083, 1093 (2004) ("It would be absurd to expect that an emergency room patient, with no particular sophistication about the operation and management of hospitals … should inquire into who is, and who is not, an employee of the institution, rather than an independent contractor.").

The situation presented in the instant matter is distinguishable from Rodrigues, where the patient's primary-care physicians had intervened in and had assumed responsibility for her care. Here, the decedent was a New York resident who was visiting relatives in Rhode Island. Dr. Mellow was not Mr. Calderone's treating physician. The decedent sought treatment from the hospital. Neither he nor anyone acting on his behalf requested the services of Dr. Mellow specifically.

Although no direct evidence was presented concerning the decedent's actual understanding of Dr. Mellow's employment status, or of his reliance upon that belief, the Court does not view *Rodrigues* as imposing a direct evidence requirement. Except in the rare instances where a witness could recount that a patient specifically expressed his or her understanding on the subject, to require direct evidence of a patient's actual belief and reliance would foreclose imposition of liability under the doctrine of apparent agency when, as a result of the patient's death or incapacity, his or her own testimony could not be obtained.

> It would be incongruous to allow a patient who survives a negligent encounter relatively intact to recover because she or he is able to testify whether she or he actually relied, but not to allow a severely impaired or deceased patient to recover because she or he is unable to recount what her or his actual belief was.

*Jennison v. Providence St. Vincent Med. Ctr.*, 174 Or.App. 219, 25 P.3d 358, 367 (2001). This Court finds no indication in *Rodrigues* that the Rhode Island Supreme Court intended to create such an incongruous situation. *See Sheldon v. Damle*, R.I.Super. Ct. C.A. WC 2001–0072, 2004 WL 2075138 at *3–4 (Sept. 3, 2004) (Thunberg, J) (unpublished decision).

Accordingly, for the above reasons, and for those set forth on the record on March 16, 2005, Kent County Memorial Hospital's motion for judgment as a matter of law on the issue of apparent agency is denied.

SO ORDERED.